IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILD WILDERNESS, an Oregon      )
nonprofit corporation, et al.,  )
                                )
                                )
                Plaintiffs,     )       Civil No. 6: 13-0523-TC
                                )
         v.                     )       O R D E R
                                )
JOHN ALLEN, Forest Supervisor   )
of the Deschutes National Forest,)
et al.,                         )
                                )
_____Defendants._____)

COFFIN, Magistrate Judge:

    Plaintiffs bring this action pursuant  to the Administrative

Procedures Act, 5 U.S.C. §§ 701 et seq.   They seek to set aside a

decision by the Forest Service to construct the Kapka Sno-park.

    Presently before the court are plaintiffs' motion (#30) for

summary judgment, the defendant-intervenor's [1] cross-motion (#35)

-----------------------

    [1]Oregon State Snowmobile Association was allowed to intervene in
this action.

for summary judgment, and defendants' cross-motion (#36) for summary judgment.

Excluding the Administrative Record (AR), declarations and exhibits, there· are more than 215 pages of briefing on these motions. Plaintiffs make numerous arguments in support of multiple claims and counts, but ultimately the arguments are not persuasive and, for the reasons stated below, this action is dismissed.

Factual Background

"Sno-parks" provide parking for outdoor enthusiasts. The U.S. Forest Service made a decision to build the Kapka Sno-park along the Cascades Lake Highway area near Bend and Mount Bachelor in Central Oregon.   This area is already used extensively by snowmobilers and backcountry skiers and snowshoers who currently use existing sno-parks.  The Kapka Sno-park will not change the motorized and non-motorized allocation areas already established in the region.

The Kapka Sno-park involves the construction of a six-acre parking lot area, two vault toilets, information kiosks, and connector trails to an existing network of trails. AR 16721. The Kapka Butte area is open to snowmobile use, and Kapka Butte is encircled by existing marked snowmobile trails. EA 29, AR 15394 (showing snowmobile trails #45, # 5, and # 4 ringing the butte), AR

2 - ORDER

17468 (same), AR 16689 (noting that snowmobile use has occurred in the project area for years). Directly across the highway are large contiguous areas that are entirely closed to snowmobiles and open to off-trail skiing (the Swampy Lakes and Bend Watershed areas). See AR 15394;16721.

In January 2009, the Forest Service published a notice of intent to publish an Environmental Impact Statement ("EIS") for the Kapka project. AR 10772. At that time, the proposal included tree-cutting in an Inventoried Roadless Area, a situation where the Forest Service's regulations provide that an EIS may be needed. See AR 12167, AR 12808, 36 C.F.R. § 220.5(a)(2), AR 9210. Many public comments to the Forest Service proposal focused on social conflict between motorized and non-motorized recreation users, particularly in the Dutchman Sno-park and Dutchman Flat areas. AR 9016-202; AR 16364.

In April 2011, the Forest Service published a Draft Environmental Impact Statement ("DEIS") for a slightly different version of the Kapka project than was ultimately adopted in September 2012. AR 13055-338. The Forest Service took public comments for 75 days. AR 16678. Plaintiffs and other interested parties submitted comments. See AR 14350-72, AR 14494-645. After reviewing the comments, the Forest Service determined on September 14, 2012 that a Final EIS was not needed, because it did not believe the project had significant environmental effects requiring

3 - ORDER

a final EIS. AR 16824. The Forest Service announced that it would proceed with its National Environmental Policy Act (NEPA) review using an Environmental Assessment ("EA") instead. AR 16824.

On September 20, 2012, the Forest Service issued an EA that provided a detailed analysis of three action alternatives and a "no-action" alternative for Kapka. AR 16362- 713. Two of the alternatives would create a larger non-motorized area near Dutchman Sno-park. AR 16366. The EA also briefly discussed seven (7) alternatives that it considered but eliminated from detailed study. AR 16405-09. These alternatives including creating a large non-motorized recreation area at Tumalo Mountain. AR 16406-08. In a 37-page appendix to the EA, the Forest Service responded to the public comments that it received on the DEIS. AR 16678-713. The Forest Service noted that a proposal to close Tumalo Mountain to motorized use would require a large scale assessment through a separate NEPA process. AR 16702.

On September 20, 2012, the Forest Service also issued a Decision Notice and Finding of No Significant Impact ("Decision" or "FONSI") for Kapka. AR 16714-43. The Decision approves construction of the new sno-park, which will provide 70 parking slots for larger vehicles and vehicles towing trailers, two vault toilets, and information kiosks. AR 16721. Construction of the parking area will disturb about 6 acres of ground. In the Decision, the Forest Service scaled back the size of the parking

4 - ORDER

area by more than 25% from the original proposed alternative. AR 16721 (square footage of final authorized area); AR 16432 (square footage of original proposed alternative).

The Decision also authorizes a 0.2 mile snowmobile connector trail from the new parking lot to an existing trail, and a 0.6 mile Nordic connector trail to link the new lot to the Nordic non-motorized trail system on the other side of Cascade Lakes Highway. AR 16722. The new park serves existing winter recreation trails and areas and does not change the existing motorized/non-motorized allocation. AR 16722, AR 16705 (response to comments). Based on design capacity, the Kapka Sno-park could allow for an increase in motorized use on a "peak-use" day of approximately 182 snowmobiles. AR 16435.

In the Kapka EA, the Forest Service acknowledged that "social conflict" among recreational users is a "key issue," and addressed that issue in detail. AR 16462-88. As the Forest Service discussed in the EA and Decision, the agency believes that Kapka will reduce the overall congestion and conflict in the Dutchman Sno-park and Dutchman Flat areas. AR 16730. It will provide new parking capacity that will alleviate the well documented parking congestion at Dutchman. See AR 16727, AR 13734-43 (photos of Dutchman Sno-park congestion), AR 16448-50, AR 16473-75. Due to Kapka, snowmobilers who want to access Tumalo Mountain and the high country may now bypass the Dutchman area completely via the existing snowmobile

trail # 6. AR 16730, AR 15394 (2011 winter recreation map). The Forest Service believes that the new park "will become the most in-demand sno-park among motorized users on the [Deschutes] for most of the winter season." AR 16728. The higher-elevation park would have a longer use season than other lower-elevation parks, easy access from the highway, and direct connections to existing trails. AR 12807. The new park will alleviate problems with illegal parking along the Cascade Lakes Highway. AR 16729.

## Discussion

Plaintiffs contend the Forest Service's decision to build the Kapka Sno-park should be set aside.  More specifically, plaintiffs argue that "by relying on an assessment"  that they contend "ignored the key issue of increased user conflicts caused by the construction of the new sno-park, the Forest Service did not adequately consider the impacts of the project in violation of NEPA." Furthermore, plaintiffs contend that "by issuing the decision to build the Kapka Sno-park without minimizing such conflicts, the Forest Service was not acting consistently with its Forest Plan or travel management regulations, in violation of the National Forest Management Act [NFMA] and the 2005 Travel Management Rule. " Id.

I.    <u>NFMA and the Travel Management Regulations</u>

Off-road vehicle use on public land has been an issue for more than forty years. In 1972, President Nixon issued Executive Order (E.O.) 11644 requiring federal agencies to "establish policies and provide for procedures that will ensure that the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands." E.O. 11644, Sec. 1 (AR 00001). The definition of "off-road vehicle" in the E.O. included motorized vehicles capable of traveling over snow or ice. E.O. 11644, Sec.2(3) (AR 00001).

The E.O. called for the Forest Service and other agencies to issue regulations that provide for designation of areas and trails on public lands that are open to off-road vehicle use, and areas that are closed to off-road vehicles, for all public lands. E.O. 11644, Sec. 3 (AR 00002). The designations must be based on protecting resources, promoting safety of all users of public lands, and minimizing conflicts with other recreational uses of those lands. <u>Id</u>. Criteria for designating lands as open or closed to off-road vehicles included minimizing damage to soil, watershed,

vegetation, or other resources; minimizing harassment of wildlife or significant disruption of wildlife habitats; and minimizing conflicts between off-road vehicle use and other recreational uses of the same or neighboring public lands. Id.

The Forest Service issued travel management regulations to implement E.O. 11644. 36 C.F.R. Part 212. The regulations require that, when designating trails and areas for off-road motorized vehicle use, the agency's objective is to minimize damage to resources, harassment of wildlife, and "conflicts between motor vehicle use and existing or proposed recreational uses of National Forest System lands or neighboring Federal lands," and it must consider "compatibility of motor vehicle use with existing conditions in population areas, taking into account sound, emissions, and other factors." 36 C.F.R. §§ 212.55(a)-(b), 212.81(c).

Furthermore, the Forest Service is required under NFMA to ensure that all agency actions are consistent with the governing Land and Resource Management Plan, here the Deschutes Forest Plan. 16 U.S.C. § 1604(i); Native Ecosystems Council, 418 F.3d 953, 961 (9th Cir. 2005). The Deschutes Forest Plan has objectives and requirements related to motorized recreation to satisfy the requirements of E.O. 11644 and the travel management regulations. Specifically, the Deschutes Forest Plan contains a Forest-wide Standard and Guideline for winter recreation that states:

> Where conflicts arise between motorized and non-motorized user groups the following sequence of steps will generally be taken:
>> 1. Trails will be designated to encourage the intended user and discourage others. Inviting trail systems will be provided for both user groups.
>
> 2. Intensify educational and indirect management efforts to resolve conflict.
> 3. Restrict motorized use of Nordic trails.
> 4. Close the area where conflict is occurring to motorized use.

AR 01421. The Forest Plan also sets forth "Recreation Opportunity Spectrum" (ROS) categories that guide winter recreation management in semi-primitive non-motorized, semi-primitive motorized, roaded-natural settings. AR 01531.

Plaintiffs argue the Forest Service has failed to comply with its legal requirements under the travel management regulations and its own Forest Plan by designating a new sno-park and trail open to motorized use without considering how to promote public safety and minimize conflicts between motorized and non-motorized user groups on National Forest lands, or closing areas to motorized use where conflicts are already occurring.

However, defendants persuasively argue that the Forest Service's travel management regulations at 36 C.F.R. Part 212 are not applicable to the Kapka project. The Kapka project is not a designation or roads, trails, or areas for motorized use and does not alter the existing motorized/non-motorized allocations for winter recreation. See AR 16621 (EA discussion of travel management

regulations, noting that "[n]o new restrictions or prohibitions under this subpart are proposed in the Kapka Sno-park project.")[2]. Kapka is not a "designation" of a "system" of roads, trails, or areas for motor vehicle use. See 36 C.F.R. § 212.50(a) (stating the purpose of the travel management regulations). Instead, designations under the travel management regulations occur when an entire Ranger District or similar unit establishes a network of roads, trails, or areas, and then prohibits motorized travel outside these designations. See id.; 36 C.F.R. §§ 212.51, 261.13. In publishing the final travel management regulations, the Forest Service stated that its field officers have "flexibility to designate routes and areas" either "for an entire administrative unit or for a single Ranger District." 70 Fed. Reg. 68264, 68279 (Nov. 9, 2005).

Here, the administrative record shows that the Deschutes has not yet undertaken the requisite large-scale NEPA assessment to designate a system of winter recreation roads, trails, and areas under the regulations. AR 16686 (response to public comments); AR 17530 (response to administrative appeal). Under the Forest Service's Federal Register explanation of the final travel

─────────────

[2]It should be noted that the Forest Service "is entitled to substantial deference to its interpretation of its own regulations ." Forest Guardians v. United States Forest Service, 329 F.3d 1089,1097 (9th Cir. 2003). "Indeed, judicial review of an agency's interpretation of its own regulations is limited to ensuring that the agency's interpretation is not plainly erroneous or inconsistent with the regulation." Id.

10 - ORDER

management regulations, this establishes that Kapka is simply not a designation under the regulations. "Until designations for a unit or District are complete and a motor vehicle use map identifying those designations is published, existing travel management policies, restrictions, and orders remain in effect." 70 Fed. Reg. at 68270.

Rather than comprising a broad designation of a system of snowmobile roads, trails, or areas, Kapka is only the construction of a six-acre parking lot within an area that has long been open to snowmobile recreation. And Kapka does change any existing motorized/non-motorized use or recreation allocations. AR 16727. Kapka "serves existing winter recreation trails and areas and does not change Forest Plan Management Allocations or managed recreation uses within the area." Id. There is no new "system" of motorized trails; Kapka will instead construct a single 0.2 mile connector from the parking lot to an existing motorized trail. AR 16723. Nor does the Kapka decision prohibit snowmobile use off of any supposed "designation" of a "system." This further clarifies that Kapka is not a designation under the travel management regulations. 36 C.F.R. § 261.13. As the Forest Service stated in publishing the final travel management regulations, "The final rule's prohibition on motor vehicle use off the designated system (§ 261.13) goes into effect on an administrative unit or Ranger District once that unit or District has designated those NFS roads, NFS trails, and areas

11 - ORDER

on NFS lands that are open to motor vehicle use and published a
motor vehicle use map identifying those roads, trails, and areas (§
212.56)." 70 Fed. Reg. at 68270.

The case law cited in Plaintiffs' Reply further illustrates
that designations subject to the travel management regulations are
those that occur over large management units on public lands, and
involve corresponding closures to motorized travel. See p. 10 of
Plaintiffs' Reply (#39).    These designations are dramatically
different than what is occurring with the construction of a
six-acre parking lot at Kapka. For example, in Ctr. for Sierra
Nevada Conservation v. U.S. Forest Service, 832 F. Supp. 2d 1138,
1147-48 (E.D. Cal. 2011), the regulation applied when the Forest
Service decided to designate more than 1,000 miles of roads and
trails for motorized travel across a 789,000-acre national forest
and prohibited cross-country travel. Similarly, Idaho Conservation
League v. Guzman, 766 F. Supp. 2d 1056, 1068 (D. Idaho) was a
challenge to a travel management plan for an entire national
forest, and Central Sierra Env'l Res. Ctr. v. U.S. Forest Serv.,
916 F. Supp. 2d 1078 (E.D. Cal. 2013) involved the comprehensive
designation of thousands of miles of motorized routes across a
national forest.

Plaintiffs attempt to liken Kapka to Wildlands CPR v. U.S.
Forest Service, 872 F. Supp. 2d 1064 (D. Mont. 2010), but that case
involved a challenge to a winter travel plan for a 3.35 million

12 - ORDER

acre national forest that banned snowmobile travel on 40% of the forest. Finally, <u>Southern Utah Wilderness Alliance v. Burke</u>, -- F. Supp. 2d --, 2013 WL 5916815 (D. Utah Nov. 4, 2013) challenged the designation of more than 4,200 miles of routes over a 2.1 million acre expanse. Given this case law and the language of the regulations themselves, Kapka is simply not a designation under the travel management regulations.

Plaintiffs also attempt to transform Kapka into a "designation" under the regulations by citing this Court's ruling in <u>Umpqua Watersheds v. U.S. Forest Service</u>, 725 F. Supp. 2d 1232 (D. Or. 2010). <u>Umpqua</u> involved a NEPA and NFMA challenge to a new 0.9 mile motorized trail in the Oregon Dunes. Plaintiffs here argue that because <u>Umpqua</u> used the term "designation" to describe the establishment of the single trail at issue in that case, that the travel management regulations must apply to any decision establishing a trail for motorized use in a national forest. But <u>Umpqua</u> – as with Kapka -- did not involve the designation of a system of motorized roads, trails, or areas across an administrative unit or ranger district. Instead, it involved a single new trail in an area already open to motorized travel and the court's use of the term "designation" had nothing to do with the travel management regulations. Indeed, the case does not even discuss the travel management regulations, much less state that the

single trail "designated" in that case was subject to those regulations.

Moreover, even if the regulations did apply to the present case, plaintiff's argument that the Forest Service failed to consider how to promote public safety and minimize conflicts between motorized and nonmotorized user groups also fails. As discussed in more detail in the next section, the Forest Service adequately addressed safety and identified "user conflict between motorized and nonmotorized users" as a "key issue" and devoted considerable attention to identifying the effects of the proposal on user conflicts. AR 16726. The Kapka project will provide parking slots that will accommodate both motorized and nonmotorized users. AR 16727. The project includes a nonmotorized connector from the parking lot to the non-motorized trails at Vista Butte Sno-park, and a separate .2 mile snowmobile access connector to existing nearby snowmobile trails. AR 16723. Nonmotorized users can also use the general forest area surrounding the Kapka Sno-park for recreation as well. AR 16727. In short, the Forest Service made user conflicts a central focus of its analysis of the Kapka project, and made numerous changes to the proposed action to help address concerns regarding user conflicts.

II. NEPA

Plaintiffs argue that the Kapka EA and FONSI violated NEPA.

Under NEPA and the APA, the Forest Service's actions, findings, and conclusions will be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Ocean Advocates v. U.S. Army Corps of Eng'rs, 361 F.3d 1108, 1118 (9th Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)). Courts apply a "rule of reason" standard in reviewing the adequacy of a NEPA document. Churchill County v. Norton, 276 F.3d 1060, 1071 (9th Cir. 2001). Through the NEPA process, federal agencies must "carefully consider detailed information concerning significant environmental impacts," Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349 (1989), but they are "not require[d] to do the impractical." Inland Empire Public Lands Council v. United States Forest Serv., 88 F.3d 754, 764 (9th Cir. 1996). Alternatively phrased, the task is to ensure that the agency has taken a "hard look" at the potential environmental consequences of the proposed action. Churchill County, 276 F.3d at 1072.

A decision is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

15 - ORDER

evidence in front of the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n. v. State farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Although an agency's actions under NEPA are subject to careful judicial scrutiny, courts must also defer to agency expertise, particularly with respect to scientific matters within the purview of the agency. See Anderson v. Evans, 371 F.3d 475, 489 (9th Cir. 2004). Review is narrow and courts are not empowered to substitute their judgment for that of the agency. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

As previously stated, plaintiffs generally contend that "by relying on an assessment" that they argue "ignored the key issue of increased user conflicts caused by the construction of the new sno-park, the Forest Service did not adequately consider the impacts of the project in violation of NEPA." However, as discussed below, the Forest Service's actions, findings and conclusions are not arbitrary , capricious, an abuse of discretion or otherwise not in accordance with the law. The Forest Service has taken a hard look at the potential environmental consequences of the proposed action. The Forest Service has not relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence in

front of it , or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

A.   Plaintiffs' argument that defendants failed to provide a satisfactory explanation for their switch from an EIS to and EA

Plaintiffs argue that defendants failed to provide a satisfactory explanation for their switch from an EIS to and EA. However, the Forest Service rationally determined that an EA was appropriate and that further EIS review was not needed. The District Ranger informed the public that "[b]ased on the public comments received and review of the environmental effects I have determined that there will be no significant environmental effects from this project." AR 16718. Plaintiffs disagree with the Forest Service's "finding of no significant impact" that accompanied the Decision. Plaintiffs claim that the Forest Service had a separate duty to explain why it did not proceed to a Final EIS after undertaking a DEIS.

If an agency determines that an EIS is not required under the applicable CEQ regulations after preparing an EA, then the agency must issue a "finding of no significant impact" ("FONSI"), which briefly states the reasons why the proposed agency action will not have a significant impact on the human environment. Id. §§ 1501.4(e), 1508.13. See generally, Dep't of Transp. v. Pub.

17 - ORDER

Citizen, 541 U.S. 752, 756-58 (2004). That is exactly what occurred in Kapka — the Forest Service completed an EA and issued a Decision with a finding of no significant impact. AR 16714-43.

Plaintiffs claim that the Forest Service suddenly changed course from the DEIS and issued an EA without an adequate explanation. But the EA was issued after a 75-day public comment period, during which Plaintiffs submitted hundreds of pages containing their views. In considering these comments and those from other recreation users, the Forest Service determined that a final EIS and Record of Decision were not warranted. Plaintiffs rely on Western Watersheds v. Kraayenbrink, 632 F.3d 472 (9th Cir. 2011), but such case is distinguishable. In Kraayenbrink, the BLM decided to amend formally promulgated regulations with new regulations on which its own experts expressed serious reservations. Id. at 492. Here, by contrast, the Forest Service never reached any substantive determination that it later sought to revise — and there is nothing in the record documenting concern by the Forest Service's experts about completing the NEPA process through an EA and Decision. Defendants correctly note that, in an abundance of caution, the Forest Service formally undertook the NEPA process in 2009 with a DEIS. It published notice in the Federal Register, inviting a broad range of comments. Based on those comments, the Forest Service determined that there were no significant environmental concerns requiring further EIS

18 - ORDER

evaluation. Moreover, all prior sno-park projects on Cascade Lakes Highway have proceeded under EAs, NEPA categorical exclusions, and Findings of No Significant Impact. AR 4277 (EA); AR 4347 (FONSI); AR 5686 (FONSI); AR 7374 (NEPA categorical exclusion); AR 10396 (FONSI). The EA and Decision were adequate for the Kapka Sno-park.

Plaintiffs contend that there is a NEPA duty -- within a project review process - to justify withdrawing a DEIS and proceeding with an EA and Decision. There is no such duty. Instead, the Forest Service has the duty, in reaching a project final decision, to review the NEPA "significance" factors and determine whether or not it believes further EIS review is required. 40 C.F.R. § 1508.27.

As discussed in further detail in Subsection B. hereto, the Forest Service specifically considered all of the relevant NEPA significance factors in reaching its September 2012 Decision, and the administrative record supports the decision not to prepare a final EIS.

In reaching the Decision, the Forest Service considered whether there were any substantial questions regarding the project's environmental impacts. See AR 16740-42. Its decision that there were no substantial questions merits deference. Courts conduct a particularly deferential review of an agency's predictive judgments about areas that are within the agency's field of

discretion and expertise as long as they are reasonable. <u>Citizens</u> <u>to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971).

There is no additional NEPA procedural requirement that an agency separately "prove," in issuing a FONSI, why it was not finalizing an earlier draft EIS. Indeed, the Forest Service's own NEPA regulations tell the agency simply to withdraw an EIS notice if it determines that "an EIS is no longer necessary" for a project. 36 C.F.R. § 220.5 (c).

The Forest Service's Kapka choice to issue a final Environmental Assessment ("EA") rather than a final EIS is also supported by the nature of the final project. Forest Service regulations identify classes of actions that normally require an EIS. 36 C.F.R. § 220.5(a). As ultimately authorized by the agency, Kapka is not in an EIS-triggering class. As originally proposed, however, Kapka included trail-cutting in an inventoried roadless area—which could have triggered the need for a final EIS. <u>Id</u>. § 220.5(a)(2). See AR 12808. During the Kapka NEPA process, the Forest Service scaled back the Kapka proposal so it includes no trail actions within any inventoried roadless area. Instead, all ground-disturbing activities are occurring within an area already zoned for motorized recreation and at the base of a butte that is encircled by groomed snowmobile trails. See AR 15394 (map showing diamond-icon snowmobile trails ringing Kapka Butte), AR 16408 (alternatives not considered in detail); AR 16411, 16416, 16421

20 - ORDER

(maps of the alternatives); AR 16502-16505 (effects to inventoried roadless areas). It is not a NEPA violation for any agency to follow its own NEPA regulations and issue a final EA and FONSI in light of a project's final design. Moreover, as previously stated, the administrative record shows that no prior sno-park projects on the Cascade Lakes Highway have been implemented under an EIS.

Plaintiffs do not cite to a NEPA statute or regulation to support their NEPA claim here and plaintiffs cite no case law establishing a procedural duty in a NEPA process to "justify" a decision to issue a FONSI after preparing an earlier draft EIS, and indeed there appears not to be any. See, e.g., Bennett Hills Grazing Ass'n v. United States, 600 F.2d 1308, 1309 (9th Cir. 1979) (finding that a draft EIS was not a final agency action subject to judicial review); Public Citizen v. National Highway Traffic Safety Admin., 848 F.2d 256, 266 fn. 39, 267 (D.C. Cir. 1988) (noting that an agency initially prepared a draft EIS but later converted its analysis to an EA and FONSI, and stating that its "limited" judicial "role is to ensure, primarily, that no arguably significant consequences have been ignored").

Plaintiffs rely on a discussion in Humane Society v. Locke, 626 F.3d 1040 (9th Cir. 2010). There, the court noted that , under the Marine Mammal Protection Act, an agency had made potentially inconsistent substantive scientific findings. Id. at 1048, 1051. In Kapka, there simply was no prior Forest Service

21 - ORDER

scientific finding or substantive policy from which the Forest Service deviated, and, as such, Humane Society is not helpful to plaintiffs' cause in this action. See, Humane Society, 626 F.3d at 1051, footnote 4.

For Kapka, the Forest Service explained in the FONSI why a final EIS was not necessary. AR 16714-43. This tracks NEPA's requirements. Under NEPA, if an agency determines that an EIS is not required under the applicable regulations after preparing an EA, then the agency must issue a FONSI. The FONSI will briefly state the reasons why the proposed agency action will not have a significant impact on the human environment. 40 C.F.R. §§ 1501.4(e), 1508.13. See generally Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 756-58 (2004).

There was no violation of NEPA arising from defendants' switch from a DEIS to and EA. [3]

---

[3]Plaintiffs generally contend that the change from a draft EIS to an EA "was not due to a thorough analysis concluding there were not significant environmental effects.   Rather, the Forest Service's decision to switch to an EA was followed by an email stating, ' looks good, but I'd take a stab at seeing if a FONSI is supportable, i.e., do we need to clarify any conclusions in effects analysis .... ' AR 16069.  The final EA and FONSI were then issued less than three months later in September 2012. " P. 16 of Plaintiff's Response (#39).  Such does not change the analysis and conclusions in Subsections A and B above.

B.   Plaintiffs' argument that defendants failed to adequately
consider the significance factors in the NEPA regulations

Plaintiffs also argue that several of the significance factors
in the NEPA regulations indicate that a final EIS was required for
the Kapka Sno-park.  The  factors are addressed below, but none of
them mandate the preparation of a final EIS in the circumstances of
this action or indicate that the Kapka EA and FONSI were arbitrary
and capricious.  Such is especially true as plaintiffs do not
persuasively advance any concerns about the impacts of the Kapka
project on the physical environment.  Instead, plaintiffs NEPA
concerns are about the project's impacts on their own subjective
experiences.  These impacts are not part of an agency's required
NEPA analysis.  NEPA requires that federal agencies prepare an EIS
for any "major federal actions significantly affecting the quality
of the human environment. " 42 U.S.C. §4332(2)(c).  The "human
environment" means the "physical environment – the world around us
so to speak." Metro. Edison Co. V. People Against Nuclear Energy,
460 U.S. 766, 772 (1983).  As the Ninth Circuit recognizes, in
light of Metro., "NEPA does not require that an agency take into
account every conceivable impact on its actions, including impacts
on citizens' subjective experiences." Bicycle Trails Council of
Marin v. Babbit, 82 F.3d 1445, 1466 (9th Cir. 1996).

23 - ORDER

1.  <u>Plaintiffs' argument that there was a threatened violation of</u>
<u>federal law</u>

Plaintiff argues that NEPA was violated because there was not
enough consideration of whether the action threatens a violation of
federal law, specifically the NFMA and Travel Management
Regulations.[4]   However, as discussed extensively in section I
hereto regarding the NFMA and the Travel Management Regulations,
the handling of the decision to build the Kapka Sno-park  does not
violate the law; it is in accordance with the law.  Moreover, the
Forest Service's NEPA analysis contemplated the legal context --
the FONSI expressly referenced and considered the EA's discussion
of the various statutes and authorities potentially implicated by
the project, including the NFMA and the Travel Management
Regulations.  AR 16742 (FONSI); AR 16616 (EA).  The Forest Service
also addressed plaintiff's "threatened violation " of a federal law
NEPA argument in response to plaintiff's administrative appeal.  AR
17530.  And the Forest Service extensively discussed user conflicts
in the Kapka EA and acknowledged that some recreationalists may
feel displaced by snowmobile use.   <u>See</u>,  <u>e.g.</u>,  16462-78.
Plaintiffs' subjective disagreement with the Kapka project does not
amount to a showing that the Forest Service violated NEPA.

---

[4]Among other things, plaintiffs assert that motorized closures
should have been an alternative in the decision process due to the
NFMA and the Travel Management Regulations.

24 - ORDER

The Forest Service assessed whether the action threatens a violation of Federal law, and rationally determined that Kapka did not require and EIS under this significance factor.

2.  Plaintiffs' argument that there is a public controversy based on potential environmental consequences

Plaintiffs' second significance factor argument is that Kapka is so "highly controversial" as to require a final EIS given its potential impact on the "human environment." 40 C.F.R. § 1508.27(b)(4). However, plaintiffs' subjective recreational preferences and their interest in the convenience of roadside backcountry recreation does not amount to Kapka being "highly controversial" and requiring a final EIS. Indeed, Plaintiffs concede that this controversy is simply their own preference within the larger group of winter recreationists. See p. 20 of Plaintiff's Response (#39). (contrasting the views of "some recreation groups" regarding the existing trails situation with the "backcountry user group").

As previously noted, but especially applicable here, both the Supreme Court and Ninth Circuit have established that NEPA does not require that an agency take into account impacts on citizens' subjective experiences. That is because NEPA's reference to the "human environment" means the "physical environment—the world around us, so to speak." Metro. Edison, 460 U.S. at 772. Kapka's

25 - ORDER

impacts to recreational preferences and the subjective experiences of "backcountry" users are not impacts on the "human environment" and therefore are not cognizable under the "highly controversial" significance factor. As the Ninth Circuit recognizes, "NEPA does not require that an agency take into account every conceivable impact of its actions, including impacts on citizens' subjective experiences." Bicycle Trails Council, 82 F.3d at 1466.

The decision in Natural Resources Defense Council v. U.S. Forest Service, 634 F. Supp. 2d 1045, 1057 (E.D. Cal. 2007) is instructive. There, a national forest decided to allow snowmobile use in 7,000 acres of a 47,000-acre recommended addition to a congressionally-designated wilderness area. Id. at 1050. The court rejected plaintiff's argument that a final EIS was required when the Forest Service received comments that raised questions about the ecological, aesthetic, recreational, legal, and policy ramifications of opening the project area to snowmobiles. Id. at 1057. As the court noted, "receipt of comments in opposition to a proposal does not render that proposal controversial under NEPA." Id. Here, as in Natural Resources, Plaintiffs' opposition does not establish that Kapka was "highly controversial" under NEPA as to require a final EIS. There is no bona fide scientific dispute about the impact of Kapka in the administrative record. The six-acre parking lot will be in area already zoned for snowmobile recreation and ringed by groomed snowmobile trails. No areas are being newly

26 - ORDER

opened to snowmobiles and snowmobiles are not being allowed in any recommended wilderness additions.   The surrounding Cascades Lake Highway will continue to offer plentiful opportunities for nonmotorized winter recreation. In addition to 59,412 acres of congressionally designated wilderness managed by the Ranger District and areas closed to motorized use due to the presence of designated Nordic trails, there are an additional 23,571 acres within the Cascade Lakes Highway area that are closed to winter motorized use. AR 16702. These areas include half of Tumalo Mountain, areas near Dutchman Flat, the Meissner Sno-park area, and the Bend municipal watershed. AR 16702.

Although the Forest Service recognizes that certain groups of winter recreation users may not be satisfied with their experiences along the Cascade Lakes Highway, the agency was entitled to rely on its own surveys of recreation use and attitudes. AR 16446- 16452 (EA); 12070-141 (Forest Service's Winter Recreation Sustainability Analysis).  That data demonstrated that the great majority of recreationalists are satisfied with their experiences and that there are numerous opportunities for solitude on the vast national forest, whether or not those opportunities are alongside a major highway connecting Bend to the Mt. Bachelor ski resort. See, e.g., AR 16474.[5]

---

[5]A 2009 Forest Service winter recreation sustainability analysis found parking capacity to be a key issue. AR 12072. The analysis noted
(continued...)

27 - ORDER

The cases that plaintiffs cite do not bolster plaintiffs' argument that Kapka is "highly controversial" and requires a final EIS. Plaintiffs rely on <u>Montana Wilderness Ass'n v. McAllister</u>, 666 F.3d 549, 558 (9th Cir. 2011), but that case did not discuss any of the NEPA significance factors or assess a decision to prepare an EA rather than a final EIS. Instead, <u>Montana Wilderness</u> centered on the substantive requirements to maintain

wilderness characteristics in the Montana Wilderness Study Act. Plaintiffs also rely on <u>Washington Trails Ass'n v. U.S. Forest Service</u>, 935 F. Supp. 1117 (W.D. Wash. 1996), which involved reconstruction and reconfiguration of off-road vehicle trails in a inventoried roadless area, and the Forest Service categorically excluded such from NEPA review. However, <u>Washington Trials</u> did not discuss any of the NEPA significance factors, and did not address a decision to prepare an EA rather than a final EIS. Its discussion of NEPA categorical exclusions has no bearing on Kapka- - in Kapka public input was solicited through a robust NEPA

---

[5](...continued)
that "users seeking a lack of crowds and little noise must travel several miles away from sno-parks to get away from other users." AR 12080. Nevertheless, the analysis found that more than 80% of visitors rated their experience as 8 or higher on a 10-point satisfaction scale. AR 12083. In its analysis, the Forest Service also noted that recreation conflict is "inherently a social impact where a person's perceptions and expectations of a recreation experience define what that experience means to them." AR 12084. The 2009 analysis was based on extensive Forest Service outreach to users through focus groups, recreation surveys, values meetings, and other efforts. AR 16709-11.

process, and in Kapka there are no trails authorized in inventoried roadless areas.

The Forest Service demonstrated that it assessed the degree to which the effects on the human environment are likely to be highly controversial, and rationally determined that Kapka did not require a final EIS under this NEPA significance factor.

3. Plaintiffs' argument regarding public safety

The Forest Service assessed the degree to which Kapka affects public safety, and rationally determined that Kapka did not require a final EIS under this NEPA significance factor. As the record shows, Kapka addresses a longstanding problem with over-parking on the popular Cascade Lakes Highway, including inappropriate parking in entrance/exit areas of sno-parks and emergency vehicle parking zones. AR 16741. The EA acknowledged that inappropriate winter recreation parking has become a public safety concern. AR 16364. The project also realigns an existing snowmobile trail in order to enhance safety. AR 16722. It undermines plaintiffs' arguments that Plaintiff Bend Backcountry Alliance is on record as recognizing the ongoing safety problem with inadequate parking along the Cascade Lakes Highway. "The need for more parking/unloading facilities for snowmobiles is obvious," Plaintiff Bend Backcountry Alliance told the Forest Service. AR 10853. As this plaintiff further explained:

> Frequently, the Vista Butte parking area [directly across
> the Highway from Kapka] is crowded with snowmobile

trailer rigs, creating a dangerous situation with the
traffic heading to Mt. Bachelor. The need is clear.

Id.

Similarly, Plaintiffs' declarant Dale Neubauer told the Forest
Service that he "under[stood] the desire of the Forest Service to
build an adequately sized snopark to allow safe entry and exit of
vehicles." AR 6949. Plaintiffs' comments establish that there is a
real safety benefit to undertaking the Kapka project, and such
cuts against their argument that a final EIS was required because
of this factor.

In addition, Supreme Court and Ninth Circuit precedent
forecloses Plaintiffs' "public safety" EIS argument, because the
increased risk of accidents between recreation users is not an
effect on the physical environment. See Metro. Edison Co., 460 U.S.
at 772. "[A] risk of an accident is not an effect on the physical
environment. A risk is, by definition, unrealized in the physical
world." See also Bicycle Trails Council, at 1466- 67. For Kapka,
the perception of an increased risk of accidents among
recreationalists did not need to be addressed in NEPA.

Moreover, the administrative record lacks any documentation of
accidents or collisions between snowmobilers and other recreation
users in the Cascade Lakes Highway area. And it appears any
increased snowmobile use from Kapka would not significantly affect
others' safety. Although Kapka will allow for an increase — on peak

30 - ORDER

days – of 182 snowmobiles throughout the Cascade Lakes Highway area, the Forest Service notes that recreational use disperses out over the large recreational terrain available off the highway. AR 16727. Specifically, the Forest Service expects Kapka to result in an estimated 1.2 additional snowmobilers per mile of snowmobile trails. AR 16727. This modest increased snowmobile use would only potentially affect the safety of those "backcountry" users who choose to recreate on snowmobile trails or within areas already designated for snowmobiles – and plaintiffs say they prefer not to recreate in these areas.

Nor would Kapka significantly impact the safety of non-motorized recreationalists in their designated zones, because snowmobiles are already banned from all Nordic trails and from tens of thousands of acres along the Cascade Lakes Highway. See AR 15394. [6]

Plaintiffs also acknowledge that Kapka will allow snowmobilers to bypass the popular mixed-use Dutchman area but still access the scenic high country. P. 23 of Plaintiff Response (#39); AR 16727. But Plaintiffs fail to adequately explain how the new bypass opportunity will hamper public safety and why this requires a final EIS. Finally, the Forest Service also noted that Kapka will reduce parking pressure at the very popular Dutchman snopark. AR 16727.

---

[6]Although plaintiffs state that trespasses do occur and law enforcement could be better, this does not change the analysis and conclusions in the present action.

31 – ORDER

The Forest Service assessed the degree to which Kapka affects public safety, and rationally determined that Kapka did not require a final EIS under this NEPA significance factor.

4. Plaintiffs' argument regarding cumulatively significant impacts

Plaintiffs argue that the Forest Service has not adequately shown there will be no cumulatively significant impacts from increased snowmobile use caused by Kapka when combined with the existing user conflicts already occurring and the plans to expand winter recreation opportunities at other sno-parks. P.p. 24 -28 of Plaintiff's Response (#39). Plaintiffs essentially contend that Kapka -when combined with other projects - will affect plaintiffs' subjctive perceptions of their recreational experiences. But the effect of Kapka and other projects on Plaintiffs' subjective perceptions and dissatisfaction over land management is not an environmental impact that must be addressed under NEPA. Metro. Edison Co., 460 U.S. at 772; Bicycle Trails Council, 82 F.3d at 1466-67.

Plaintiffs identify two potential future expansions at other sno-parks, but neither establishes that a final EIS was required given cumulative effects. Plaintiffs state that the Kapka EA did not consider the cumulative impacts of Kapka in light of the planned expansion of the Meissner nonmotorized lot. However, the EA disclosed the planned Meissner expansion in its cumulative effects

32 - ORDER

analysis, and provided a conclusion regarding these effects. AR 16442, AR 16493-96. Plaintiffs position is unclear as to how a Meissner expansion – combined with Kapka - would negatively impact their subjective interests and perceptions. Snowmobiles are not allowed in Meissner. Kapka may increase snowmobile use, but snowmobiles may not use the non-motorized trails at Meissner. Moreover, Plaintiffs have praised the terrain and off-trail opportunities at Meissner. AR 9447. Against this backdrop, it is hard to see how enhancing access to the Meissner terrain is bad for their recreational preferences or how Kapka has a negative impact on Meissner such that an EIS is required. See AR 16494.

Plaintiffs also complain that the Kapka project and the Forest Service's interest in a future proposal to allow dog-friendly cross-country ski trails near Kapka will "be to the detriment of the large backcountry user group." P. 26 of Plaintiffs' Response (#39). But Plaintiffs' Kapka administrative appeal complained about the Forest Service's removal of dog-friendly ski trails from Kapka. AR 17036. Plaintiffs complained that the Kapka decision "does not maintain opportunities for recreating with dogs." AR 17054. Plaintiffs told the Forest Service then that the dog-friendly trails were among the "more uncontroversial aspects" of the project. Id. Now, Plaintiffs change course and claim that future dog-friendly trails in conjunction with the Kapka project required a final EIS. Such does not amount

33 - ORDER

to a ground for establishing a NEPA violation by the Forest Service.

The potential future dog-friendly trail system is also uncertain enough that cumulative effects analysis would not be worthwhile. Although the Forest Service plans to "pursue a proposal" to establish non-motorized Nordic trails permitting dogs across Cascade Lakes Highway from Kapka, it has not yet begun any NEPA process to assess such a proposal. There is no proposal for the dog-friendly trails, and it is not a "reasonably foreseeable future action" under 36 C.F.R. § 220.3.

As this Court recently recognized, "The government is not required to consider the cumulative impacts of a project if not enough information is available to permit meaningful consideration." Soda Mountain Wilderness Council v. U.S. Bureau of Land Management, 945 F. Supp. 2d 1162, 1169 (D. Or. 2013). (citing Envtl. Prot. Info. Ctr. v. U.S. Forest Serv., 451 F.3d 1005, 1014 (9th Cir. 2006). In Soda Mountain, BLM was not required to consider the cumulative impacts of a future project as part of another project's EA if the future project's specifics and a NEPA "scoping letter" had not yet been issued when the agency issued the EA for the other project. Soda Mountain, 945 F. Supp. 2d at 1169. With Kapka, there are no specifics regarding a future dog-friendly trails proposal, and the Forest Service has not issued any NEPA scoping letter for such a project.

34 - ORDER

Plaintiffs cite Washington Trails, the NEPA categorical exclusion case, but that case does not assist them. In Washington Trails, the Forest Service did not take into account other off-road vehicle projects. In Kapka, by contrast, the Forest Service took into account the planned Meissner expansion as part of the cumulative effects analysis. And in Kapka, the potential for future dog-friendly trails across the highway is not only uncontroversial per plaintiffs' administrative appeal, but is simply too speculative to allow for meaningful effects consideration.

Plaintiffs also cite Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 868-70 (9th Cir. 2005), but that case does not help establish that the Forest Service violated NEPA. In Kapka, the Forest Service EA adequately catalogued past, present, and future projects as part of the NEPA cumulative effects analysis. This analysis included the planned Meissner expansion. AR 16442, AR 16493- 98. In Kapka, the Forest Service also acknowledged that the project would allow for snowmobile use to increase and documented this increase by estimating a maximum increase in snowmobiles on peak days (for the entire Cascade Lakes Highway area). AR 16464. The Forest Service also documented an estimated increase in snowmobilers per mile of snowmobile trails. AR 16473. Plaintiffs fail to explain how this analysis was arbitrary and capricious.

Finally, Plaintiffs claim that a final EIS was required, because the Forest Service did not complete a winter recreation

35 - ORDER

capacity analysis. But Plaintiffs fail to cite any requirement that such an analysis must be performed for each winter recreation project and there is no such requirement.

The Forest Service rationally determined that a final EIS was not required because no significant adverse cumulative effects are anticipated with Kapka and other projects.

C.   Plaintiffs' argument that the EA's purpose and need and range of alternatives was arbitrary and capricious

Plaintiffs argue that the EA's purpose and need and range of alternatives was arbitrary and capricious.

NEPA requires that agencies specify the purpose and need for a proposed action and analyze the environmental consequences of the proposed action as well as a reasonable range of alternative actions. 40 C.F.R. §§ 1502.13, 1502.14; Envt'l Prot. Info. Ctr (EPIC) v. U.S. Forest Serv., 234 Fed.Appx. 440, 2007 WL 1417163 (9th Cir. 2007) (applying purpose and need and range of alternative requirements to an EA). Because project alternatives derive from the stated purpose and need, the goal of a project necessarily dictates the range of reasonable alternatives. Westlands Water Dist. v. U.S. Dep't of Interior, 376 F.3d 853, 865 (9th Cir. 2004); League of Wilderness Defenders-Blue Mountains Biodiversity Project v. U.S. Forest Serv., 689 F.3d 1060, 1069 (9th Cir. 2012) (scope of alternatives analysis depends on underlying purpose and need

36 - ORDER

specified by the agency). While agencies have discretion when defining the purpose and need of a project, their discretion is not unlimited and an agency cannot define its objectives in unreasonably narrow terms such that the outcome is preordained. Id.; Nat'l Parks & Conservation Ass'n v. BLM, 606 F.3d 1058, 1070 (9th Cir. 2010); Alaska Survival v. Surface Transp. Bd., 705 F.3d 1073, 1084 (9th Cir. 2013).

Courts evaluate an agency's statement of purpose and need under a reasonableness standard and will overturn a statement that is arbitrary and capricious. Nat'l Parks & Conservation Ass'n, 606 F.3d at 1070; Westlands Water Dist., 376 F.3d at 865, 867. In assessing the reasonableness of a purpose and need statement, courts must consider the statutory context of the federal action. League of Wilderness Defenders, 689 F.3d at 1070 (looking to Forest Service Organic Act and Research Act when assessing purpose and need of fire project).

The EA identified that Kapka is needed to "provide additional safe high elevation parking that will enhance a variety of winter recreation opportunities and provide access to over snow trail systems near the Cascade Lakes Highway corridor." AR 16394. An agency has considerable discretion to define a project's purpose and need. See Westlands Water Dist. v. U.S. Dep't of Interior, 376 F.3d 853, 866 (9th Cir. 2004). See 36 CFR § 220.7(b)(1) (Forest Service NEPA regulations providing that an EA "must briefly

37 - ORDER

describe the need for the project"); 40 C.F.R. § 1508.9(b) (CEQ NEPA regulation providing that an EA shall include "brief" discussion of the need).

The record shows that existing sno-parks do not always accommodate existing uses, especially on holidays and weekends, and sno-park capacity will not meet future demand. AR 16448-49 (chart). Lack of parking is not only a major barrier in obtaining a desired recreation experience, but causes safety problems. AR 16448, AR 16394.

Although plaintiffs argue that the context of NFMA and Travel Management Regulations in relation to user conflicts need to be considered in the purpose and needs, plaintiffs ignore the fact that Kapka will address user conflicts, because it is expected to relieve parking pressure at the very popular Dutchman area. Kapka will draw snowmobilers further towards Bend, and away from Dutchman, and still allow them to access the high country while bypassing Dutchman entirely. Although Kapka will allow for increasing snowmobile use in the Cascade Lakes Highway area, snowmobiles are restricted from half of Tumalo, all of the surrounding nearby wilderness, and the large tracts of nonmotorized recreation areas near the Cascade Lakes Highway. Plaintiffs fail to adequately explain for the purposes of this action how increased snowmobile use of snowmobile trails will affect their "backcountry" preferences. Contrary to Plaintiffs' contentions, the Forest

38 - ORDER

Service made no "prior determination" in 1996 that closing any areas to snowmobiles, or other measures to reduce user conflicts, "needed" to occur at the same time as dealing with parking shortages on the Cascade Lakes Highway. Plaintiffs argue that a 1996 EA establishes that Kapka needed to include snowmobile closures in its purpose and need. This is wrong. The 1996 EA centered on a proposed action to expand the parking capacity at several sno-parks. AR 4279-80. The Forest Service acknowledged that this proposed action - focused on increasing parking -- could increase user conflicts. AR 4283, AR 4318-19. Plaintiffs' reliance on the 1996 EA is also questionable, because this 18-year-old document predates the 2004 Dutchman Summit, a result of which was the Forest Service's agreement to double the size of nonmotorized terrain at Tumalo Mountain while cutting in half the motorized terrain at Tumalo Mountain. AR 7149-51, AR 7152-53, AR 12807, AR 16452. And plaintiffs ignore the fact that the Forest Service in 2008 decided to further increase nonmotorized winter recreation facilities by tripling the parking capacity of the Meissner Sno-park and building 7.8 miles of new trails exclusively for nonmotorized users. AR 10396, AR 15394, AR 17468.

Despite plaintiffs' contentions, the Forest Service did not make any "prior determination" in the initial two-page 2006 Kapka scoping notice that closing any areas to snowmobiles, or other measures to reduce user conflicts, "needed" to occur at the same

39 - ORDER

time as dealing with parking shortages. P. 28 pf Plaintiffs'
Response (#39). See AR 8993-94 (2006 scoping notice). Instead, the
2006 notice described several "projects" that the Forest Service
was beginning to analyze under NEPA. Id. The Forest Service did not
issue any finding in 2006 that these projects needed to proceed
together. Id. In fact, the Forest Service stated in 2006 that
building a new snowmobile-geared sno-park at Kapka would "relieve
parking congestion" at Dutchman. Id. Plaintiffs also fail to
acknowledge that the projects initially described in the 2006
notice were reassessed in light of public comments and that a new
proposal was resubmitted to the public in January 2009. AR
10756-58. The 2009 scoping notice focused on a single project - the
creation of the Kapka lot. In response to this scoping notice,
plaintiff Bend Backcountry Alliance agreed that the "need for more
parking/unloading facilities for snowmobiles is obvious" and that
the current parking situation was "dangerous" on the Cascade Lakes
Highway. AR 10853. Kapka addresses a long-documented parking
shortage and public safety problem. Trade-offs between motorized
and nonmotorized users have already occurred at Tumalo Mountain and
will continue in the future. But there is no NEPA requirement
indicating that the Forest Service was arbitrary and capricious by
not "bundling" Kapka with more sweeping proposals to close
established areas to snowmobilers.

Contrary to plaintiffs' arguments, the Kapka EA considered a reasonable range of alternatives. The Forest Service considered in detail a "no-action" alternative and three action alternatives. It also discussed seven additional alternatives that it declined to consider in comprehensive detail, including alternatives to close areas to snowmobilers. AR 16405- 09. And the Forest Service discussed "area closure" alternatives in the response to public comments. AR 16705, AR 16708, AR 16708. The Forest Service's range of alternatives complied with NEPA. See Native Ecosystems Council v. U.S. Forest Serv., 428 F.3d 1233, 1246 (9th Cir. 2005) ("So long as all reasonable alternatives have been considered and an appropriate explanation is provided as to why an alternative was eliminated, the regulatory requirement is satisfied.") (internal quotation omitted).

Reallocations of motorized/non-motorized recreation zoning were outside the adequate purpose and need of providing for ample and safe parking, as the Forest Service explained at AR 16406. Given the valid purpose and need for increased high-elevation parking, it was rational under NEPA for the Forest Service to not further consider additional alternatives to close or "rezone" areas already open to snowmobilers. Parking is needed for snowmobilers. Relief of parking congestion at Dutchman is also needed. Kapka's parking lot is within an area "where motorized use occurs" and will rely on nearby existing trails. AR 16705. By contrast, closure of

41 - ORDER

motorized recreation areas is a different means to a different end. See City of Angoon v. Hodel, 803 F.2d 1016, 1021 (9th Cir. 1986) ("When the purpose is to accomplish one thing, it makes no sense to consider the alternative ways by which another thing might be achieved.").

Furthermore, as previously stated, the Kapka alternatives will already address motorized/nonmotorized user conflicts by taking pressure off the popular Dutchman area. AR 16693. And the Forest Service EA considered in detail several alternatives to respond to public concerns regarding conflicts at Dutchman. AR 16417 (EA discussion of Alternative Three). Alternative Three would relocate a popular snowmobile trail at Dutchman Flat, and relocate the existing snowmobile play area, creating a larger, contiguous nonmotorized area adjacent to Dutchman Sno-park. AR 16418. Alternative Four would also relocate the snowmobile facilities at Dutchman, to "reduce social conflict." AR 16423. There was a reasonable range of alternatives under NEPA.

Plaintiffs cite a grazing case, Western Watersheds Project v. Abbey, 719 F.3d 1035 (9th Cir. 2013), but that case is inapplicable. In Western Watersheds, each of an EA's detailed alternatives continued grazing at the exact same levels as under the prior permit. Id. at 1050-51. There was not a "no-grazing" detailed alternative. Id. at 1050. The court noted that "[t]here is no meaningful difference between the four alternatives considered

42 - ORDER

in detail as to how much grazing they allow." Id. at 1051. Kapka is a sharp contrast, because Kapka's "no -action" alternative would not build a new parking lot at all and would not allow for more parking and increased recreational use by snowmobilers. AR 16410. There is a meaningful difference between this alternative and the detailed action alternatives. Moreover, the three detailed Kapka action alternatives substantively differ from one another, including the size of the Kapka parking lot, amenities for nonmotorized recreationalists, and whether social conflict-geared alterations to motorized facilities at Dutchman are included. See AR 16413-17 (discussion of Alternative Two), AR 16417-33 (discussion of Alternative Three), AR 16422-29 (discussion of Alternative Four); AR 16432-34 (charts summarizing elements of the different alternatives).

The no-action Kapka alternative, and the three detailed action alternatives, would result in varying degrees of access and use by motorized and non-motorized recreationalists alike. See AR 16435-39 (tables noting effects of each alternative on use levels and other measures), AR 16464-69 (tables noting impacts on parking among the alternatives and other measures). There was a reasonable range of alternatives.

Finally, Kapka would not prevent the Forest Service from assessing the need for potential motorized closures in the Cascade Lakes Highway area in the future. If closures are appropriate to

maintain the balance of the various recreation user groups, the Forest Service will make those decisions through future NEPA analysis.

The EA's purpose and need and range of alternatives was not arbitrary and capricious.


D. Plaintiffs' argument that defendants did not take a hard look at the effects of the action

Plaintiffs argue that defendants did not take a hard look at the effects of the action. However, the Kapka EA appropriately considered the direct, indirect, and cumulative effects of the Kapka proposal. The Forest Service acknowledged up front that the project may cause some non-motorized recreationalists to feel "displaced" and to seek to recreate in other nearby areas. AR 16462-88.

An EA need not "compile an exhaustible examination of each and every tangential event that could impact the local environment." Tri-Valley CAREs v. U.S. Dept. of Energy, 671 F.3d 1113, 1129 (9th Cir. 2012). Rather, an EA should "create a workable public document that briefly provides evidence and analysis for an agency's finding regarding an environmental impact." Id.

Plaintiffs argue that the Forest Service violated NEPA because they believe more vehicles will park in the new lot once snow covers the lines of the parking spaces. This speculation is not a

44 - ORDER

basis for a NEPA violation. The EA shows that the Oregon Department of Transportation ("ODOT") plans to blade the lot and use a snow blower to remove snow. AR 16409. That same EA discussion also explains that the lot provides expanded lanes and areas for snow storage, per ODOT's recommendation for snow removal. AR 16450. Plaintiffs complain about one instance when the Wanoga sno-park was overparked. But that was 20 years ago, and Wanoga has now been expanded to accommodate 95 additional vehicles. Plaintiffs also complain that Kapka is much larger than Wanoga, but omit the fact that ODOT has criticized the Wanoga lot because it lacks sufficient room for snowplow operations, and that the Kapka parking lot was designed to avoid that problem. AR 16409.

Plaintiffs also claim the Forest Service violated NEPA because the Forest Service assumed 2.6 people for each vehicle using the lot. But the Forest Service's assumption is taken directly from its 2008 study of traffic counts and visitor surveys on the Deschutes. AR 15926-78. The Forest Service deems this study the "best source of information about recreation" on this forest. AR 16706. See AR 15943.

The Forest Service's 2009 winter recreation sustainability analysis used a 3.0 persons-per-vehicle assumption, AR 12095, but did not establish that this assumption was based on actual traffic counts and visitor surveys , as did the 2008 study for its 2.6 persons-per-vehicle assumption. In addition, it was well within the

Forest Service's discretion to decline to use the 2009 assumption, as the table including that assumption shows erroneous square footage tallies for the sno-parks and therefore may not be a reliable metric. The 2009 study overstates the size of the Dutchman, Lower Three Creek, and Swampy Lakes sno-parks. Compare AR 12095 (2009 analysis table) with AR 16450-51 (EA table)

Plaintiffs' argument that the Forest Service chose the wrong study runs afoul of administrative law principles. First, courts may not impose themselves as a panel of scientists that instructs the agency , chooses among scientific studies, and orders the agency to explain every possible scientific uncertainty. <u>Winter v. Natural Res. Def. Council Inc.</u>, 555 U.S. 7 (2008). Second, an agency must support its conclusions with studies that the agency deems reliable. <u>Tri-Valley CAREs v. U.S .D.O.E.</u>, 671 F.3d 1113, 1124 (9th Cir. 2012) Here, the Forest Service supported its visitor use calculations with the recreation study that it deemed reliable.

Plaintiffs claim that the Kapka EA was arbitrary and capricious because it failed to discuss the project's direct effects on the Kapka Butte area. However, as discussed above, defendants adequately discussed the project's direct effects on the Kapka Butte area.  Defendants also took backcountry users opinions into account and those opinions were represented in a 2009 winter recreation analysis.

46 - ORDER

All of plaintiffs' other arguments have been considered and found unpersuasive.

As discussed above , the Forest Service's actions, findings and conclusions are not arbitrary , capricious, an abuse of discretion or otherwise not in accordance with the law. The Forest Service has taken a hard look at the potential environmental consequences of the proposed action. The Forest Service has not relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence in front of it , or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

The Forest Service adequately considered the user conflict issue. Moreover, "[u]ltimately it is the agency's role  -not the court's - to balance competing recreational uses. Riverhawks v. Zepeda, 228 F.Supp 2d 1173, 1184 (D. Or. 2002); See also, Hells Canyon Alliance v. United States Forest Service, 227 F.3d 1170, 1178 (9th Cir. 2000). Tradeoffs between motorized and nonmotorized users have already occurred and will continue in the future. The record documents that the Forest Service is continuing a long, inclusive process to manage winter recreation use on the Cascade Lakes Highway. As previously stated, in 2004, the Forest Service heard from various user groups and convened the "Dutchman Summit."

47 - ORDER

In the wake of this meeting, the Forest Service closed off one-quarter of the popular Tumalo Mountain area to snowmobilers, leaving half of the Tumalo Mountain area to off-trail use by nonmotorized users, and the other half to snowmobilers. AR 7149-51, AR 7152-53, AR 12807, AR 16452. The Forest Service also held a "Dutchman II" summit in April 2005.  AR 8781.

By Forest Service order, snowmobiles are prohibited on marked Nordic ski and snowshoe trails. AR 16442. In 2008, the Forest Service decided to further increase non-motorized winter recreation facilities by tripling the parking capacity of the Meissner Sno-park and building 7.8 miles of new trails exclusively for non-motorized users. AR 10396. The Meissner Sno-park accesses an extensive area entirely closed to motorized users. AR 15394, AR 17468.  The Forest Service stated it would need to address motorized closures separately in a large scale assessment.  AR 13377. The Forest Service noted that a proposal to entirely close Tumalo Mountain to motorized use would require a large scale assessment through a separate NEPA process. AR 16702.

<u>CONCLUSION</u>

For the reasons stated above, plaintiffs' motion (#30) for summary judgment is denied.  Defendants' cross-motion (#36) for

48 - ORDER

summary judgment and defendant-intervenor's cross-motion (#35) for

summary judgment are allowed.    This action is dismissed.

DATED this ___14<sup>T</sup>___ day of April, 2014

THOMAS M. COFFIN
United States Magistrate Judge

49 - ORDER